# GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA

v.

**Rebecca CUDDY.**

**No. 94–112–M.P.**

Supreme Court of Rhode Island.

May 10, 1995.

---

C. Russell Bengtson, Patricia A. Buckley, Carroll, Kelly & Murphy, Providence, for plaintiff.

Richard I. Abrams, Patricia M. Watson, Providence, for defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the petition for certiorari of General Accident Insurance Company of America (General Accident or plaintiff). General Accident sought review of an order entered in the Superior Court that denied its motion for summary judgment. For the reasons stated below, we grant the petition. The facts and procedural history pertinent to the petition are as follows.

On May 25, 1990, Rebecca Cuddy (defendant) was involved in a collision with a car driven by Susan DiDonato (DiDonato) in East Greenwich, Rhode Island. The accident is the subject of a separate action pending in the Providence County Superior Court in which Cuddy alleges that she suffered severe and permanent injuries as a result of DiDonato's negligent operation of a motor vehicle.

At the time of the accident, DiDonato was insured by Nationwide Insurance Company (Nationwide) with liability insurance for bodily injury up to the amount of $300,000, and Cuddy was insured by General Accident with uninsured/underinsured coverage for bodily injury up to $500,000.

In October 1992, General Accident received a letter from Cuddy's attorney indicating that Cuddy was asserting a claim against the uninsured/underinsured motorist provisions of her policy as a result of the accident with DiDonato. In this letter, the attorney stated he was authorized to settle the suit for $80,000.

General Accident responded by commencing an action in Superior Court for declaratory judgment, pursuant to G.L.1956 (1985 Re-

enactment) chapter 30 of title 9, The Uniform Declaratory Judgments Act, asking that the court declare that plaintiff was not obligated to pay Cuddy any sums under the uninsured/underinsured motorist provisions of the General Accident policy until Cuddy demonstrated that her damages were in excess of the coverage provided by Nationwide, namely $300,000. As part of its suit, General Accident filed a motion for summary judgment, arguing that in order to trigger the underinsured motorist coverage, Cuddy's bodily injury damages must exceed DiDonato's liability coverage to the extent that a deficiency would result that required supplemental coverage by General Accident. The plaintiff further asserted that Cuddy was entitled to recover only $80,000 (the amount of her settlement offer) from DiDonato because, General Accident claimed, that was the undisputed amount of defendant's damages.

Cuddy objected to General Accident's motion for summary judgment and argued that the motion should be denied. Cuddy contended that the material issue of the exact amount of her damages was still in dispute because the $80,000 settlement offer did not create an undisputed amount of damages. To support her contention, Cuddy attached to her objection an affidavit, alleging that in her opinion her bodily injury claim had a value in excess of $300,000, although ten months earlier she had authorized her attorney to offer to settle the claim for $80,000 "in order to expedite settlement." Cuddy also stated that she had withdrawn her offer of settlement.

At a hearing on its motion for summary judgment on September 28, 1993, General Accident argued that it was not obligated to make any payment to Cuddy unless and until the recovery against DiDonato exceeded $300,000. General Accident also requested that the trial justice stay an arbitration proceeding that Cuddy sought against plaintiff. Cuddy in turn argued that the damages in the case were clearly in dispute.

In response to these arguments, the trial justice requested that the parties submit briefs in respect to the applicability to their positions of G.L.1956 (1989 Reenactment)

§ 27–7–2.1(B)(2), as amended by P.L.1990, ch. 340, § 1. This statute provides that a person entitled to recover damages is not required to make a claim against or bring an action against the uninsured/underinsured tortfeasor as a prerequisite to recovering damages from the insurer providing coverage to the tortfeasor. *Id.*

The hearing on the motion for summary judgment was resumed in Superior Court on November 30, 1993, at which time the arbitration between plaintiff and defendant was stayed. The justice, however, denied General Accident's motion for summary judgment on the basis of this court's ruling in an unpublished order, *General Accident Insurance v. Prout,* No. 91–20–A. (R.I., filed Sept. 16, 1991), (*Prout*), and ruled that Cuddy would have to establish damages in excess of $300,000 in order to proceed against General Accident. An order was entered on January 5, 1994, denying General Accident's motion for summary judgment and staying any arbitration proceeding between the parties pending a full hearing on General Accident's request for declaratory judgment.

General Accident then filed a petition for certiorari with this court seeking review of the trial justice's decision; it argued that no further hearing on the merits was necessary for a determination of the purely legal issue of when an injured motorist may pursue his or her uninsured/underinsured motorist coverage. The petition was granted on June 22, 1994.

### Analysis

The issue before this court on certiorari is whether § 27–7–2.1 requires a claimant to prove that his or her damages exceed the tortfeasor's limits of coverage before asserting an uninsured/under-insured motorist claim against the claimant's own uninsured/underinsured coverage. We hold that the statute does contain such a requirement and hold further that Cuddy failed to establish that her damages exceeded the limits of coverage of DiDonato's policy.

Section 27–7–2.1 provides in pertinent part:

"(B)(1) For the purposes of this section 'uninsured motorist' shall include an underinsured motorist. An underinsured motorist is the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the *limits or damages* that persons insured pursuant to this section are legally entitled to recover because of bodily injury, sickness, or disease, including death resulting therefrom.

(2) A person entitled to recover damages pursuant to this section shall not be required to make a claim against or bring an action against the uninsured or underinsured tortfeasor as a prerequisite to recover damages from the insurer providing coverage pursuant to this section. In the event that the person entitled to recover against an underinsured motorist recovers from the insurer providing coverage pursuant to this section, that insurer shall be entitled to subrogation rights against the underinsured motorist and his or her insurance carrier." (Emphasis added.)

The statute speaks of the underinsured's coverage in an amount less than the "limits or damages" of the claimant. Cuddy, the claimant here, held coverage up to $500,000, while DiDonato's coverage extended to $300,000. Cuddy argued that on the basis of this difference DiDonato met the statutory definition of an underinsured motorist, and therefore, Cuddy had an immediate and direct claim against her own underinsured coverage provided by General Accident. Under Cuddy's view, she could conceivably have no damages at all and still be able to proceed with a direct claim against her underinsured coverage as long as the tortfeasor's coverage limits were less than her own.

▪ It is axiomatic that this court will not construe a statute so as to result in an absurd outcome or to defeat the underlying purpose of the statute. *In re Falstaff Brewing Corp.*, 637 A.2d 1047, 1050 (R.I.1994). If a mechanical application of a statutory definition produces such an effect, we look beyond the statute's language in order to give effect to the purpose of the act. *Id.* (quoting *Labbadia v. State*, 513 A.2d 18, 22 (R.I.1986)).

This court has previously held that § 27–7–2.1 was enacted to give the insured protection against the "economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles." *Aldcroft v. Fidelity and Casualty Co. of New York*, 106 R.I. 311, 318, 259 A.2d 408, 413 (1969). The legislative purpose of the statute was not, however, "to guard against *all* economic loss." (Emphasis added.) *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550, 553 (R.I.1990). Therefore, we have imposed reasonable limitations on the construction of the uninsured/underinsured motorist statute in effectuating a public policy that the statute be interpreted in a "manner that affords insurers some financial protection." *Id.* (quoting *DiTata v. Aetna Casualty & Surety Co.*, 542 A.2d 245, 248 (R.I.1988)). Such financial protection would be lost if every insured whose limits of liability were greater than the limits of liability of a negligent tortfeasor were able to pursue an immediate claim against their own uninsured/underinsured motorist coverage. Cuddy's interpretation would increase the insurer's cost of doing business because both insurance carriers would necessarily incur the legal and administrative expenses resulting from the assertion of a claim. Such a result would undermine the purpose of the statute to protect "those who have attempted to protect the public interest and themselves by purchasing insurance." *DiTata*, 542 A.2d at 247.

This court's earlier interpretation of § 27–7–2.1 supports the requirement that a claimant establish the amount he or she is legally entitled to recover from the tortfeasor and establish that the claimant's damages exceed the tortfeasor's coverage. Specifically General Accident relies on our holding in *Prout*, where this court denied defendant Prout's appeal on the ground that "Prout failed to establish that his *actual damages* exceeded the insurance coverage afforded the negligent motorist." (Emphasis added.)

▪ Thus, to satisfy the statutory definition of "uninsured motorist," a claimant must present proof of damages that are legally entitled to be recovered. In order to invoke uninsured/underinsured coverage, it is necessary to determine whether the tortfeasor's

liability policy limit is less than the actual amount of damages sustained by the claimant, damages that the claimant is legally entitled to recover from the tortfeasor. *See Gosselin v. Automobile Club Insurance Co.,* 574 A.2d 1243 (R.I.1990) (discussing qualification of underinsured motorist when tortfeasor's coverage is less than claimant's "damages"); *see alsgo* Alan I. Widiss, *Perspectives on Uninsured Motorist Coverage,* 62 Nw. U.L.Rev. 497, 506–07 n. 35 (1967) ("in order to establish his rights against the company either in a court or before an arbitrator, the insured should be required to show: (1) that he was covered by an uninsured motorist coverage endorsement, (2) *that he has sustained damages,* (3) that he has complied with all enforceable conditions precedent of the policy, and possibly (4) that he was injured by an uninsured motorist"). (Emphasis added.)

In the case before us, General Accident asserts that DiDonato was not an underinsured motorist because, according to plaintiff, the damages to Cuddy were $80,000, the amount of the settlement offer made by her. With a policy limit of $300,000, General Accident argued, DiDonato could not possibly be underinsured. Cuddy, on the other hand, argued that her damages exceeded DiDonato's policy limit, on the basis of the claim, in her affidavit, that her damages exceeded $300,000. The trial justice, following *Prout,* denied General Accident's motion for summary judgment on the belief that the matter should go to a hearing in order to ascertain whether Cuddy's damages exceeded DiDonato's liability coverage.

■ We are of the opinion that Cuddy failed to provide any legally sufficient proof that her damages exceeded DiDonato's liability coverage, and for this reason the trial justice should have granted General Accident's motion for summary judgment. In deciding a motion for summary judgment, the trial justice must determine whether a genuine issue of material fact exists by examining the documents of the parties, including affidavits. *Ludwig v. Kowal,* 419 A.2d 297, 301 (R.I.1980). This court has long held that the affiant must demonstrate such knowledge of the facts as would make him or her a competent witness. *Henry W. Cooke Co. v. Sheldon,* 53 R.I. 101, 103, 164 A. 327, 328 (1933). In particular, general language of defense is insufficient. *Id.* The party opposing the motion must show to the satisfaction of the court that there is a substantial factual question in dispute, and the affidavit must state in definite terms the basis of the defense, as well as *"contain evidential facts and not conclusions."* (Emphasis added.) *Id.*

■ Such a level of proof is particularly relevant to proceedings arising out of § 27–7-2.1 because § 27-7-2.1(B)(2) mandates that a claimant is not required to make a claim or bring an action against the negligent tortfeasor as a prerequisite to the insurer providing uninsured/underinsured coverage. In order to establish damages, a claimant must prove that he or she is entitled to invoke § 27-7-2.1 by introducing admissible evidence documented and explained in affidavits that his or her damages exceed the limits of coverage of the negligent tortfeasor. That is, the claimant must introduce material evidence that proves the damages, and upon such evidence a determination can be made as to whether the underinsured coverage is applicable.

■ In the instant case, Cuddy's affidavit, upon which she supported her underinsured claim, merely stated in respect to damages, "It was my opinion, based on conversation with my Attorney and with family members, that my bodily injury claim had a value in excess of Three Hundred Thousand Dollars ($300,000)." Cuddy produced no other evidence of damages. The assertion of the level of damages was not validated or verified by any proof of damages, such as medical records, depositions or opinions of doctors, hospital or doctor's bills, evidence that, if set forth in a factual context, *could* raise an issue of material fact for trial. "[T]he bald assertion that [such circumstances] do exist is insufficient to place the [movant] beyond the reach of summary judgment." *Egan's Laundry & Cleaners, Inc. v. Community Hotel Corp.,* 110 R.I. 719, 723, 297 A.2d 348, 351 (1972). Cuddy merely stated that such damages existed but failed to prove *any* damages. Therefore, because Cuddy presented

no issue of material fact, the trial justice should have granted General Accident's motion. As a consequence, Cuddy failed to prove that she could invoke the underinsured coverage of § 27–7–2.1.

We consequently grant General Accident's petition for certiorari. We quash the order denying General Accident's motion for summary judgment, and affirm the stay of all arbitration proceedings regarding this matter. The papers in this case are remanded to the Superior Court with our decision for entry of judgment in favor of General Accident duly endorsed thereon.